# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. JOSHUA LUKE,<br><br>Plaintiff,<br><br>v.<br><br>HEALTHSOUTH CORPORATION, et al.,<br><br>Defendants. | Case No. 2:13-cv-01319-APG-VCF<br><br>**ORDER (1) OVERRULING OBJECTIONS AND (2) DENYING MOTION TO STAY**<br><br>(ECF Nos. 87, 88) |

Magistrate Judge Ferenbach granted the defendants' motion to disqualify the law firm Troutman Sanders LLP from representing relator Joshua Luke in this action. ECF No. 86. Luke objects. Luke also requests I stay the disqualification order until the issue is resolved on appeal. I overrule the objections and deny the motion to stay. The Troutman firm is disqualified from representing Luke in this action.

**I. BACKGROUND**

Luke filed this qui tam action in July 2013. ECF No. 1. The case was sealed while the United States considered whether it was going to intervene. In May 2017, the United States opted not to intervene. ECF No. 34. The complaint was served on the defendants in June 2017. ECF No. 42 at 2.

Luke was represented in this action by attorneys from the Troutman firm. The Troutman lawyers appeared pro hac vice, except attorney Kevin Kieffer, who is a Nevada licensed attorney. ECF Nos. 38-40; 87 at 2 n.2.

In August 2017, the defendants moved to disqualify the Troutman firm from representing Luke because in early 2017, defendant Healthsouth Corporation hired two Troutman attorneys, Peter Robinson and Robb Willis, to provide lobbying services for Healthsouth in Georgia. ECF No. 66-2 at 3. As part of that arrangement, Healthsouth provided confidential information to Robinson and Willis. *Id.* According to Healthsouth Executive Vice President John Patrick Darby,

Healthsouth would not have entered into the lobbying agreement had it known that Troutman had already filed suit against Healthsouth on Luke's behalf in Nevada. *Id.*

The lobbying agreement is between Healthsouth and Troutman Sanders Strategies, a limited liability company wholly owned by the Troutman law firm. ECF No. 66-3 at 3. The agreement identifies those who will lobby on Healthsouth's behalf, including attorneys Robinson and Willis. *Id.* at 3. The agreement states that Strategies may receive support from attorneys at the Troutman law firm with Healthsouth's approval and, if that occurs, Healthsouth would have to enter into a separate agreement for services with the Troutman firm. *Id.* The agreement states that Strategies would not be providing legal services to Healthsouth and "[a]ccordingly, [Healthsouth] will not have an attorney-client relationship with [Strategies] and its employees with regards to the services that [Strategies] will provide related to the agreement." *Id.* at 4. The agreement has a "conflict of interest" section which states that Strategies will not lobby positions that would be in conflict with Strategies' obligations under the agreement. *Id.* It also states Strategies "is not providing legal services as part of this agreement." *Id.* However, it does not state that the Troutman law firm may represent someone suing Healthsouth.

Although the agreement was with Strategies, Strategies' invoice directed that payment be remitted to the Troutman law firm. ECF No. 66-4. Additionally, Robinson and Willis used their Troutman law firm email addresses and phone numbers to communicate with Healthsouth about their lobbying services. ECF No. 66-2 at 3.

Magistrate Judge Ferenbach held a hearing and granted the motion to disqualify Troutman from representing Luke in this case. ECF Nos. 86, 92. Judge Ferenbach applied the Nevada Rules of Professional Conduct and concluded that under Nevada law, a lawyer providing a law-related service such as lobbying is still subject to Nevada's Rules regarding client conflicts. ECF No. 92 at 24. Judge Ferenbach thus ruled there was a concurrent conflict because Robinson and Willis both represented Healthsouth and were associated in the same firm with the attorneys representing Luke in this lawsuit against Healthsouth, and Healthsouth did not give informed consent to this conflict. *Id.* at 25-26.

**II. OBJECTIONS (ECF No. 87)**

Luke objects to Judge Ferenbach's disqualification decision. In his initial objection, Luke argues that Judge Ferenbach erred by applying the Nevada Rules of Professional Conduct to the two lawyers who provided lobbying services in Georgia. ECF No. 87. Instead, Luke argues, the court should have applied a choice-of-law analysis and selected Georgia as the state with the most significant relationship with the Georgia lobbyists' conduct and therefore Georgia's Rules of Professional Conduct should have applied. Luke contends that under Georgia law, a lawyer providing lobbying services is not subject to the Rules of Professional Conduct so long as the lobbying client knows legal services are not being provided and no attorney-client relationship is being created. *See* Georgia Bar Rule 4-102 & cmt. 9 (RPC 5.7). Luke asserts the lobbying agreement made clear to Healthsouth that no legal services were being provided and no attorney-client relationship was formed. Healthsouth responds that the Nevada Rules of Professional Conduct apply because the parties agreed that was the law that applied, the Local Rules of this District require it, and applicable authority supports that decision.

Luke moved for leave to file a reply, which I granted. In his reply, Luke argues he has not waived the argument about the applicability of Georgia law because that argument was presented at the hearing in front of Judge Ferenbach. Luke also argues that even if the Nevada Rules control, Rule 1.0A(b) of those Rules directs the court to look to substantive law outside the Rules to determine if an attorney-client relationship exists. Luke contends the substantive law that should apply to make that determination is Georgia law because that is the law governing the relationship between Healthsouth and Strategies.

Healthsouth responds that Luke waived the argument about Rule 1.0A(b) because he did not raise it before the Magistrate Judge or in the objections. Healthsouth also argues on the merits that Judge Ferenbach properly applied the Nevada Rules when deciding whether the Troutman attorneys are disqualified in this case. Healthsouth contends Robinson and Willis would be precluded from representing Healthsouth in this case, and thus the Troutman attorneys appearing in this case with whom Robinson and Willis are associated are likewise disqualified.

Healthsouth contends that once Troutman ran a conflicts check, it should have either declined the lobbying engagement or attempted to obtain Healthsouth's informed consent. Having done neither, Healthsouth contends the Magistrate Judge properly disqualified the Troutman firm.

The standard for review of a magistrate judge's order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); LR IB 3-1(a). I may affirm, reverse, or modify, in whole or in part, the magistrate judge's ruling, or remand the matter to the magistrate judge with instructions. LR IB 3-1(b).

### 1. Waiver

The defendants argue Luke has waived most of his arguments by not raising them before the Magistrate Judge or in the objections. I have the discretion to consider evidence and arguments presented for the first time in an objection to a magistrate judge's order, but I am not required to do so. *Brown v. Roe*, 279 F.3d 742, 744 (9th Cir. 2002). Given the importance of disqualifying Luke's counsel of choice, I will address the parties' arguments raised throughout the briefing.

### 2. Disqualification

Courts should subject disqualification motions to "particularly strict judicial scrutiny" due to the possibility that disqualification motions may be used for tactical advantage and "to harass opposing counsel." *Shurance v. Planning Control Int'l, Inc.*, 839 F.2d 1347, 1349 (9th Cir. 1988) (quotations omitted); *see also Brown v. Eighth Judicial Dist. Court ex rel. Cty. of Clark*, 14 P.3d 1266, 1270 (Nev. 2000) (en banc) (stating "parties should not be allowed to misuse motions for disqualification as instruments of harassment or delay"). In deciding whether to disqualify an attorney, I must balance the competing interests of Luke's right to be represented by counsel of his choice, Healthsouth's "right to be free from the risk of even inadvertent disclosure of confidential information, and the public's interest in the scrupulous administration of justice." *Brown*, 14 P.3d at 1269-70. I generally should resolve doubts in favor of disqualification. *Id.* at 1270.

"To prevail on a motion to disqualify opposing counsel, the moving party must first establish "at least a reasonable possibility that some specifically identifiable impropriety did in fact occur." *Id.* (quotation omitted). The moving party "then must also establish that the likelihood of public suspicion or obloquy outweighs the social interests which will be served by a lawyer's continued participation in a particular case." *Id.* (quotation omitted).

As attorneys appearing in this district, the Troutman lawyers are bound by the Nevada Rules of Professional Conduct. LR IA 11-7 ("An attorney admitted to practice under any of these rules must adhere to the standards of conduct prescribed by the Model Rules of Professional Conduct as adopted and amended from time to time by the Supreme Court of Nevada, except as these standards may be modified by this court."). Under Nevada Rule of Professional Conduct 1.7, "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest," unless (among other things) each affected client gives informed consent.[1] A concurrent conflict exists if "[t]he representation of one client will be directly adverse to another client," or "[t]here is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." Nev. R. Prof. Conduct 1.7(a). Nevada Rule 1.0A(b) provides that "principles of substantive law external to these Rules determine whether a client-lawyer relationship exists."

Under Nevada Rule 1.10(a), "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.9, or 2.2 . . . ." Thus, the question of whether the Troutman lawyers who have appeared in this case are disqualified turns on whether Robinson or Willis could appear as

---

[1] Although the lobbying agreement has since been terminated, I apply the concurrent conflict standard where the attorney "simultaneously represents clients with differing interests . . . even though the representation ceases prior to filing of the motion to disqualify." *Unified Sewerage Agency of Washington Cty., Or. v. Jelco Inc.*, 646 F.2d 1339, 1345 n.4 (9th Cir. 1981). "If this were not the case, the challenged attorney could always convert a present client into a 'former client' by choosing when to cease to represent the disfavored client." *Id.*

Luke's attorneys in this case. The Magistrate Judge's conclusion that they could not was neither clearly erroneous nor contrary to law.

Rule 1.10(a)'s imputed disqualification rule refers back to Nevada's Rules for conflicts. Under Nevada's Rules, a lawyer cannot concurrently represent adverse clients without the clients' informed consent. Regardless of how Georgia would define the relationship between the Troutman lawyers and Healthsouth, if Robinson or Willis attempted to represent Luke against Healthsouth in Nevada, the Nevada Rules of Professional Conduct would not allow it. *See* State Bar of Nev. Standing Comm. on Ethics and Professional Responsibility Formal Opinion No. 52 (concluding a lawyer (or a subsidiary of a law firm) who provides lobbying services is subject to Nevada Rule of Professional Conduct 1.7). Because Robinson and Willis are disqualified, so is the entire Troutman firm. Nev. R. Prof. Conduct 1.10(a).

This does not mean the court is applying the Nevada Rules to the lawyers in Georgia who had no reason to expect this result. Rather, the court is applying the Nevada Rules to the lawyers who appeared in Nevada in this case. Because the Nevada Rules apply to these lawyers, it was incumbent on them to avoid a disqualifying condition under those Rules. Strategies conducted a conflicts check before accepting the lobbying agreement in Georgia. ECF No. 92 at 17. The Troutman lawyers thus were aware of the possibility that by accepting the lobbying agreement, the Nevada representation could be jeopardized, even if Georgia would allow it. The Troutman lawyers could have attempted to obtain Healthsouth's informed consent or they could have declined the lobbying agreement. But what they could not do under Nevada law was concurrently provide law-related services to Healthsouth in Georgia and represent Luke suing Healthsouth in Nevada.

Healthsouth thus has established a violation of the Nevada Rules. Healthsouth also has shown the likelihood that public suspicion or obloquy outweighs the social interests which will be served by Troutman's continued participation in this case. I do not discount Luke's interest in being represented by counsel of his choice and Luke has been represented by Troutman for some time. But this concern is mitigated by the fact that I concurrently ruled that former Troutman

attorney Merril Hirsh may represent Luke now that Hirsh has left the Troutman firm. Healthsouth's right to be free from the risk of even inadvertent disclosure of confidential information is not strongly implicated here, as there is no evidence the Troutman attorneys shared confidential Healthsouth information and the Troutman attorneys deny it under oath.

However, the rule against concurrent conflicts is based on the attorneys' duty of loyalty, the breach of which Nevada does not take lightly. *State Farm Mut. Auto. Ins. Co. v. Hansen*, 357 P.3d 338, 342 n.6 (Nev. 2015) (en banc) ("The representation of clients with conflicting interests and without informed consent is a particularly egregious ethical violation that may be a proper basis for complete denial of fees." (quotation omitted)); *Stalk v. Mushkin*, 199 P.3d 838, 843 (Nev. 2009). The public may view with suspicion a multi-state law firm that accepts a lobbying agreement in one state while representing someone suing the lobbying client in another state without obtaining informed consent. Weighing the competing interests, disqualification is the proper result. I therefore overrule the objections to Magistrate Judge Ferenbach's disqualification ruling. The Troutman firm is disqualified from representing Luke in this action.

### III. MOTION TO STAY (ECF No. 88)

Luke requests I stay the disqualification order pending appeal. Luke argues there are serious questions on the merits and disqualifying his counsel of choice is irreparable. Luke contends the balance of hardships tips sharply in his favor because he is denied counsel of choice even though he did nothing wrong and any Healthsouth confidential information given to Robinson and Willis has not been disclosed to the Troutman attorneys in this case. Finally, he contends the public interest favors a stay because disqualification will disrupt the proceedings in this case.

The defendants respond that Luke is unlikely to prevail on appeal and Luke is not irreparably harmed if he must temporarily retain additional counsel while his appeal is pending. The defendants argue they would be irreparably harmed by conducting discovery with a disqualified firm and potentially have to redo discovery if substitute counsel is required. The defendants also contend that given how long an appeal will take, the disqualification order will

effectively be moot because the Troutman firm will be able to litigate the case in the meantime. Finally, the defendants contend the public interest favors disqualification because to be disqualified in the first place, the conduct must undermine public confidence in the judicial system. The defendants also argue that if the court is inclined to stay the disqualification order, then the entire case should be stayed pending resolution of that issue.

To qualify for a stay, Luke must demonstrate: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm, (3) whether the stay will "substantially injure the other parties interested in the proceeding," and (4) a stay is in the public interest. *Golden Gate Rest. Ass'n v. City & Cty. of S.F.*, 512 F.3d 1112, 1115 (9th Cir. 2008) (quotation omitted). Alternatively, under the sliding scale approach, Luke must demonstrate (1) serious questions on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships tips sharply in his favor, and (4) a stay is in the public interest. *Id.* at 1116.

There are serious questions going to the merits. It is not a frivolous position that the Nevada Rules of Professional Conduct would direct the court to look outside those Rules to determine whether an attorney-client relationship existed, that a choice-of-law analysis would favor applying Georgia law to determine the nature of the relationship between Strategies and Healthsouth, and that there was no attorney-client relationship giving rise to a conflict under Georgia law.

Disqualification may constitute irreparable harm because it "immediately deprives the losing party from the representation of his choice and disrupts the litigation." *Watkins v. Trans Union, LLC*, 869 F.3d 514, 519 (7th Cir. 2017) (quotation omitted). Those concerns are significantly lessened here, however, because by separate order I have ruled that attorney Hirsh may continue to represent Luke going forward. Hirsh has "spent many hours discussing the case with Dr. Luke," was "the most senior attorney who has worked on this case," and was "responsible for its day-to-day management." ECF No. 88-3 at 1. Consequently, Luke will not be deprived of one of the most active, senior, and knowledgeable attorneys of his choice. Luke also has been represented in this matter from the beginning by Craig Delk of Thorndal, Armstrong,

Delk, Balkenbush & Eisinger.  Delk and his firm have not been disqualified.  ECF No. 1.  Thus, Luke is not completely deprived of counsel of his choice and the litigation will not be substantially disrupted absent a stay.

Given these circumstances, the balance of hardships does not tip sharply in Luke's favor.  Luke retains counsel of his choice, as Hirsh and Delk will remain on the case.  In contrast, if I stayed the disqualification, Healthsouth would be forced to conduct the litigation against a law firm that formerly represented it, likely throughout the entire proceedings in this court.  Due to heavy caseloads, appeals to the Ninth Circuit unfortunately can take a long time.  The disqualification decision would effectively be nullified if Troutman were able to continue representing Luke in this case while he appeals my ruling.  For these same reasons, the public interest does not favor a stay.  I therefore deny it.

**IV.  CONCLUSION**

IT IS THEREFORE ORDERED that relator Joshua Luke's objections **(ECF No. 87) are OVERRULED**.  The Troutman Sanders LLP law firm is disqualified from representing Luke in this action.

IT IS FURTHER ORDERED that relator Joshua Luke's motion to stay **(ECF No. 88) is DENIED**.

DATED this 10th day of November, 2017.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE