LAWRENCE J. SEMENZA, III, ESQ., Bar No. 7174
Email: ljs@skrlawyers.com
CHRISTOPHER D. KIRCHER, ESQ., Bar No. 11176
Email: cdk@skrlawyers.com
JARROD L. RICKARD, ESQ., Bar No. 10203
Email: jlr@skrlawyers.com
SEMENZA KIRCHER RICKARD
10161 Park Run Dr., Ste. 150
Las Vegas, NV 89145
Telephone: (702) 835-6803
Facsimile: (702) 920-8669

*Attorneys for Defendant Kenneth Bowman*

JAMES J. PISANELLI, ESQ., Bar No. 4027
Email: jjp@pisanellibice.com
PISANELLI BICE, PLLC
400 S. 7th Street, Suite 300
Las Vegas, NV 89101
Telephone:    (702) 214-2100
Facsimile:    (702) 214-2101

*Attorney for Defendants HealthSouth Corp.
and HealthSouth of Henderson, Inc.*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.*, Joshua Luke,<br><br>Plaintiff,<br><br>v.<br><br>HEALTHSOUTH CORPORATION, HEALTHSOUTH OF HENDERSON, INC., and KENNETH BOWMAN,<br><br>Defendants. | Case No.: 2:13-cv-01319-APG-VCF<br><br>**DEFENDANTS' CONSOLIDATED REPLY IN SUPPORT OF MOTIONS TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (Docs. 133, 134)**<br><br>**ORAL ARGUMENT REQUESTED (Hearing Requested)** |

Plaintiff's Opposition confirms that Plaintiff does not know—and cannot plead—the necessary facts to allege an FCA violation. The Amended Complaint, like the Initial Complaint, fails to adequately allege the fundamental elements of an FCA claim: a fraudulent scheme and false claims. According to Plaintiff, HS Henderson engaged in a massive fraud to artificially lower the FIM scores of *every single Medicare patient for a more than four-year period*. Yet, despite the purported scope and duration of the fraud, Plaintiff, unbelievably, cannot point to even a *single false claim* that HS Henderson supposedly submitted. Lacking any firsthand knowledge regarding the sprawling fraud he alleges, Plaintiff's Opposition focuses only on secondhand information. But the second hand information that forms the Amended Complaint's only basis for the alleged fraudulent scheme is stated so vaguely that it fails both Rule 9(b)'s particularity requirement and Rule 8(a)'s plausibility requirement. Not surprisingly then, Plaintiff's Opposition also fails to identify any reliable indicia that false claims actually were submitted. Moreover, the Amended Complaint does not adequately plead materiality, and Plaintiff's Opposition appears to misunderstand that required element.

In addition, Plaintiff's Opposition hardly disputes that the Amended Complaint fails to plead the essential element of FCA knowledge as to Mr. Bowman, and that HealthSouth undertook any action in furtherance of HS Henderson's alleged submission of false claims. More importantly, Defendants identified each of these pleading deficiencies in their motions to dismiss the Initial Complaint, but Plaintiff has done nothing to fix them in the Amended Complaint. As a result, the Court should dismiss the Amended Complaint with prejudice.

**ARGUMENT**

**I.   Plaintiff's Opposition cannot avoid the Amended Complaint's failure to plead adequately a fraudulent scheme.**

In his Opposition, Plaintiff breezily concludes that the Amended Complaint adequately alleges the "who," "what," "when," "where," and "how" of the fraudulent scheme. Opp. at 7–11. Defendants do not dispute that Plaintiff has alleged the supposed "where" of the fraudulent scheme —HS Henderson. But in all other respects—i.e., the "who," "what," "when," and "how"—the Amended Complaint is deficient. Instead of providing what Rules 8 and 9(b) require, Plaintiff offers

1

a mishmash of vague, speculative, and conclusory allegations in hopes that they collectively will amount to something that meets his pleading obligations. They do not.

### A. The Amended Complaint does not adequately allege the "when" of the alleged fraudulent scheme.

Plaintiff claims that the purported fraud began in January 2008 and ended in March 2012. Opp. at 9. But, as Defendants have explained, Plaintiff has no basis whatsoever for this allegation. Doc. 134 at 7–9. Certainly, Plaintiff's personal experience does not give him any basis to allege such a scheme, given that Plaintiff's employment at HS Las Vegas did not begin until September 2011, more than three-and-a-half years after the purported fraud began. *See United States ex rel. Bumbury v. Med-Care Diabetic & Med. Supplies, Inc.*, No. 10-81634-CIV, 2014 WL 12284079, at *3 (S.D. Fla. June 23, 2014) ("The absence of personal knowledge requires dismissal of all alleged [FCA] violations preceding [the plaintiff's]…employment date."). Nor does the Amended Complaint's secondhand information support the alleged duration. *See* Doc. 134 at 8–9. Plaintiff claims that the statistics he attaches to the Amended Complaint prove that the fraud "took place consistently from January 2008 through March 2012," but the statistics were from the year 2011 or later—and some even *post-date* the alleged fraud. *See* Am. Compl., Exs. B–D. Plaintiff offers nothing to show that the statistics are representative of a more than four year span from January 2008 through March 2012.

Moreover, the alleged duration of the fraud is utterly implausible, and thus fails Rule 8(a). Plaintiff repeatedly contends that Mr. Bowman "directed and oversaw" the fraud. Opp. at 8. But Mr. Bowman did not begin working at HS Henderson until **2009**, more than a year after the fraud supposedly began. Doc. 134 at 8–9.[1] It is impossible for Mr. Bowman to have "directed" or "implemented" a fraud even before he arrived at HS Henderson.[2]

---

[1] In the Initial Complaint, Plaintiff attempted to tie the start of the alleged fraudulent scheme to the start of Jaya Patel's employment at HS Henderson. Compl. ¶ 66. In the Amended Complaint, Plaintiff has jettisoned that allegation. Instead, he contends that Mr. Bowman devised and "implemented" the entire fraud—even though Mr. Bowman did not begin working at HS Henderson until 2009, more than a year after the alleged fraud began.

[2] For this reason, Mr. Bowman moved in the alternative to dismiss the claims against him related to alleged fraudulent conduct that occurred before Mr. Bowman arrived at HS Henderson. Doc. 134 at 24. Plaintiff did not address this argument in his Opposition. At a minimum, then, the Court should dismiss all claims against Mr. Bowman for alleged fraudulent conduct in 2008.

Plaintiff does not even address the implausibility of his allegations of the duration of the purported fraud. Instead, Plaintiff attempts to sidestep the issue by arguing that he is not required to allege "a precise time frame" of the fraud. Opp. at 5. But the point is that the Amended Complaint here *does* allege a precise time frame of the purported fraud, and the alleged time frame is patently implausible—which highlights the implausibility of Plaintiff's entire claim. *See In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1058 (9th Cir. 2014) (affirming dismissal of a securities fraud lawsuit, in part because the timing alleged was not plausible).

### B. The Amended Complaint does not adequately allege the "what" or the "how" of the alleged fraudulent scheme.

Plaintiff argues that the "what" was a fraudulent scheme to artificially lower ***every single Medicare patient's FIM score for a period of more than four years*** and to submit false claims for reimbursement based on those artificially lowered FIM scores. Opp. at 1–2, 9–10. The "how" was an alleged policy at HS Henderson to require ***every single patient admitted to HS Henderson for a period of more than four years*** "to be brought in on a stretcher and then remain in bed for three days." *Id*. at 8. As Plaintiff tells it, this policy somehow resulted in patients receiving artificially low FIM scores. *Id*. at 8, 10. But the Amended Complaint's allegations of this purported fraudulent scheme are neither sufficiently particularized under Rule 9(b) nor plausible under Rule 8(a).

#### 1. Plaintiff has no firsthand knowledge.

As an initial matter, Plaintiff's Opposition confirms that he had no firsthand knowledge that HS Henderson even adopted the alleged FIM scoring policy, let alone that the policy resulted in the submission of any false claims to the government. *See Bumbury*, 2014 WL 12284079, at *2 (holding that the plaintiff "lacks personal knowledge to assert fraud with particularity"); *see also Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 999 (9th Cir. 2010) ("outsiders" must still comply with Rule 9(b)'s particularity requirement). Plaintiff repeatedly disputes that he is an "outsider" (Opp. at 2, 3, 17), but he cannot dispute that he never worked at HS Henderson, that his only connection to HealthSouth was as CEO of HS Las Vegas for less than a year, and that he had no connection to *any* HealthSouth facility for three-and-a-half years of the alleged four-year fraudulent scheme. Am. Compl. ¶¶ 9, 18.

3

In fact, Plaintiff's only personal knowledge of the alleged fraud comes from a single "hurried" tour. But a single tour could never give Plaintiff a sufficient basis to allege a more-than-four-year fraudulent scheme purportedly involving every single HS Henderson patient. Moreover, by his own admission, Plaintiff did not even witness any allegedly unlawful FIM scoring. Although Plaintiff saw patients in bed in their rooms and two patients entering the facility on the gurney, he also saw other patients working with physical therapists in the gym. *Id*. ¶¶ 67–68. These are exactly the kinds of things one would expect to see at any rehabilitation hospital. Plaintiff did not witness a single artificially low FIM score being entered, let alone a single false claim being submitted.

### 2. The alleged secondhand information is not pleaded with particularity and plausibility.

Because he does not have personal knowledge, Plaintiff pivots. He argues that, even without personal knowledge, he nevertheless may comply with Rule 9(b) if he is able to establish the details of the alleged fraudulent scheme "through the testimony of others." Opp. at 6. But as Defendants have already shown (Doc. 134 at 11–15), the secondhand and hearsay information in the Amended Complaint is inadequately pleaded and does not support Plaintiff's speculative fraudulent scheme.[3]

For example, Plaintiff principally relies upon secondhand accounts from Lura Devito, Kathy Manning, and Lisa Casupang. But the Amended Complaint does not adequately allege that any of them had any basis to know about HS Henderson's alleged "unlawful fimming" practices during the relevant period. Of the three, only Devito actually worked at HS Henderson, but the Amended Complaint is silent about when she worked there and whether she ever had any conversations with HS Henderson employees purportedly involved in the alleged fraud. Manning and Casupang worked at HS Las Vegas, not HS Henderson. Moreover, all three accounts are far too vague to satisfy Rule 9(b)'s particularity requirements. Plaintiff claims that the three told him that certain HS Henderson employees were instructed to implement certain patient practices, but none of the three identified who gave the instructions, who received them, when the instructions were given, and what was said.

---

[3] Defendants did not argue that the Court cannot consider the secondhand information because it is hearsay. Instead, Defendants argued that the secondhand, hearsay accounts are deficient because they fail Rule 9(b) twice: first, because Plaintiff fails to allege with particularity the circumstances in which he learned the information; second, because the accounts themselves are too vague and provide little detail on the substance of the alleged fraud. Doc. 134 at 11.

4

Devito's, Manning's, and Casupang's accounts thus do not answer the "who, what, when, where, and how" and fail Rule 9(b). Doc. 134 at 12–13. Plaintiff does not even bother addressing these deficiencies in his Opposition.

Plaintiff also claims that Mr. Bowman "told" him that HS Henderson increased Medicare reimbursement by keeping patients in bed for their first three days of their hospital stay. Opp. at 12; Am. Compl. ¶ 69. But in the Initial Complaint, Plaintiff alleged that Mr. Bowman told him that keeping patients in bed was *for patient safety*. Mr. Bowman only "***implied***," but did not actually state, that HS Henderson also kept patients in bed to inflate payment claims. Compl. ¶ 54. Plaintiff makes no attempt to explain this glaring inconsistency between his two complaints, which Mr. Bowman identified in his motion to dismiss. Doc. 134 at 14. As a result, Plaintiff's account of what Mr. Bowman supposedly told him is simply not plausible (or credible) and is thus insufficient to support the alleged fraudulent scheme and any purported liability as to Mr. Bowman. *Id.* at 14–15.

Finally, conclusory allegations that certain HealthSouth "corporate employees" told Plaintiff that HS Henderson used a "different" FIM scoring system, and that HS Henderson was told to *stop using* that system (Opp. at 9)—an allegation which refutes HealthSouth's supposed liability (*see infra*)—are exactly the sort of vague innuendo and rumor that courts have repeatedly found insufficient under Rules 8 and 9(b) to support an FCA claim. *See, e.g.*, *United States ex rel. Gravett v. Methodist Med. Ctr. of Ill.*, 82 F. Supp. 3d 835, 843–44 (C.D. Ill. 2015).[4]

### 3. The alleged fraudulent scheme misunderstands (and is inconsistent) with the FIM scoring process.

More fundamentally, the "how" of the alleged fraudulent scheme is at odds with how the FIM

---

[4] Nor do the statistics comparing the FIM scores at HS Henderson with the FIM scores at other facilities make for particularized allegations of a fraudulent scheme. Not only does the data cover just a fraction of the more than four year alleged fraudulent period, but Plaintiff has not refuted (and cannot refute) the obvious alternative explanation that, during the time period covered by the data, HS Henderson simply served a more dependent population—particularly given that some of that data *post-dates* the alleged fraud. Doc. 134 at 15–16. Plaintiff alleges that he "*knows*," based only on his experience as CEO of HS Las Vegas, that HS Henderson patients were not more acutely ill than patients at other HealthSouth rehab facilities. Am. Compl. ¶ 88. But Plaintiff offers no "specific facts" to show why working at a different hospital for just 10 months allows him to make broad generalizations about the patient population at HS Henderson over a more than four year period, nearly all of which predated his time at HS Las Vegas. Doc. 134 at 16.

scoring process actually works.  Even if Plaintiff had adequately alleged that HS Henderson adopted patient practices like the "gurney" policy or the "three-days-in-bed" policy (and he did not), Plaintiff has failed to adequately allege that these policies would in fact have resulted in a lower FIM score for each and every HS Henderson Medicare patient for more than four years.

Plaintiff assumes that these alleged treatment practices necessarily would have lowered the FIM scores for every single patient.  That is the sort of assumption an outsider to the FIM scoring process would make.  In reality, FIM scoring is based on clinicians' *judgment* of a patient's ability to accomplish independently certain tasks, like eating, grooming, bathing, and getting dressed.[5]  The IRF-PAI Manual makes clear that several of the alleged patient policies could not possibly have had an effect on a patient's FIM score.  For example, requiring patients to be "rolled in on gurneys" at admission will not necessarily result in a lower FIM score for "transferring," as Plaintiff contends.  Opp. at 8.  On the contrary, the "transferring" FIM score measures a patient's ability to move from a "hospital bed" to a chair or a standing position, and back—not how the patient enters the facility— and can be taken upon the patient's initial arrival at the facility or at some other time during the first three days of the patient's stay.  IRF-PAI Manual III-33, 34.  Similarly, Plaintiff takes issue with HS Henderson's alleged mandatory bed bath policy.  Am. Compl. ¶¶ 72–73.  But a bed bath ***cannot*** affect the FIM score for "bathing," which measures the patient's ability to wash, rinse and dry ten separate areas of the body without coaxing or assistance—regardless of whether the bathing is in a "tub, shower or sponge/***bed bath***."  IRF-PAI Manual III-15, 16 (emphasis added).  Other purported patient practices, like the alleged "three-days-in-bed" policy, only could affect a patient's FIM score if a clinician allowed the fact that the patient had been instructed to remain in bed to affect the clinician's judgment of how much assistance the patient actually required.

Because FIM scoring is dependent upon the exercise of clinical judgment, carrying out the alleged scheme to undermine appropriate FIM scoring would have demanded the outright

---

[5]   IRF-PAI Manual (4/01/2004) III-1, 3, *available at* https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/InpatientRehabFacPPS/downloads/irfpaimanual040104.pdf.   Importantly, each final FIM score is the "***lowest*** (most dependent) score" for that item as determined by any one of several clinicians who observe and measure the patient's "perform[ance multiple times] during the ***entire 3-calendar-day admission time frame***."  IRF-PAI Manual III-3, 5 (emphasis added).

6

participation of dozens of trained clinicians tasked with exercising clinical judgment while caring for and assessing the patients' disabilities. Otherwise, there is simply no way that every single HS Henderson patient's FIM scores for a more than four year period could possibly have been artificially lowered. Plaintiff argues that clinicians may have been "[un]knowingly complicit" in the alleged fraud. Opp. at 10–11. But that is inconsistent with the alleged fraud and demonstrates that Plaintiff does not understand the applicable regulations and cannot plausibly state a claim.

Plaintiff has not pleaded any particular details about how those trained clinicians acted to mis-assess the patients' abilities. There is nothing in the Amended Complaint about *who* ordered allegedly improper treatment; *who* measured the patient's functionality; whether that person *manipulated* the measurement; or whether the scoring recorded *that clinician's* measurement as the FIM score, as opposed to another clinician's measurement at a different time. At most, Plaintiff offers a conclusory allegation that HS Henderson employees "trained" staff "to employ techniques to record admitted patients as being more disabled, regardless of whether they actually were." Doc. 132 ¶ 77. But this allegation is far too vague to satisfy Rule 9(b).[6]

### C. The Amended Complaint does not adequately allege the "who" of the alleged fraudulent scheme.

Even as to the "who" of the fraudulent scheme, the Amended Complaint is deficient. Plaintiff alleges that Mr. Bowman "directed and oversaw" the alleged fraud. Opp. at 8. But as discussed, the alleged fraudulent scheme supposedly began in January 2008, while Mr. Bowman did not join HS Henderson until 2009. *See supra* at 2. It is patently implausible that Mr. Bowman could have directed a fraudulent scheme that began more than a year before he arrived at HS Henderson.

In addition, as just explained, carrying out the alleged scheme to artificially lower FIM scores would have required the participation or acquiescence of dozens of trained clinicians. These clinicians could not have been simply "[un]knowingly complicit" in the alleged scheme. Yet the

---

[6]   In this regard, Plaintiff's reliance on *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, No. 2:14-cv-01786-MMD-GWF, 2017 WL 1902159 (D. Nev. May 9, 2017), is actually unhelpful to Plaintiff's case. There, the plaintiff was a true "insider," and her allegations included an excerpt from an email sent by one of the defendants requiring employees to falsify documents under threat of termination or reprimand. *Id*. at *4–5. There are no such allegations here. In addition, that case, unlike here, included specific examples of patients affected by fraud. *Id*.

7

Amended Complaint does not identify a single clinician who allegedly participated or acquiesced in that supposed scheme. Thus, the Amended Complaint fails to adequately identify "who" perpetrated the alleged fraud.

## II. Plaintiff's Opposition fails to identify any representative examples of false claims and any "reliable indicia" that false claims actually were submitted.

Plaintiff's Opposition does not dispute that "[a]n actual false claim is the *sine qua non* of a[n FCA] violation." *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks omitted). Nor does Plaintiff dispute that "unsavory conduct is not, without more, actionable under the FCA." *Id.* at 1058. The Opposition also appears to concede—as it must—that Plaintiff cannot identify any representative examples of false claims submitted to CMS. That is, even though Plaintiff alleges that from January 2008 to March 2012 *all* of HS Henderson's Medicare claims were false, the Amended Complaint cannot point to a single patient or instance during that four-year span where HS Henderson incorrectly recorded a FIM score, let alone where HS Henderson submitted a claim to the government and received a Medicare reimbursement on the basis of any such improper score. Doc. 134 at 18–21. The Amended Complaint doesn't even say how many Medicare patients were treated at HS Henderson during that time.

As the Opposition recognizes, in the absence of any such representative examples, Plaintiff must allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Ebeid*, 616 F.3d at 998–99 (quotation omitted); Opp. at 11–12. Plaintiff has alleged neither. Even if the Amended Complaint adequately pleaded a fraudulent scheme to lower FIM scores (and it does not), Plaintiff fails to plead any "reliable indicia" that those lower FIM scores resulted in even a single false claim being submitted to the Government, let alone thousands of false claims.

The Opposition seems to assume that lowering FIM scores automatically results in an increase to the amount of Medicare reimbursement. Opp. at 12. But as Defendants have pointed out (Doc. 134 at 20), the Amended Complaint shows that an artificially low FIM score may not even result in a higher payment from Medicare—an argument that the Opposition ignores, and yet another example

8

of how Plaintiff does not understand the applicable regulations. *See* Doc. 134 at 20. Plus, neither the Opposition nor the Amended Complaint provides any information about the claims process for IRFs like HS Henderson. Without such allegations, the Amended Complaint does not create a "strong inference" that false claims were submitted.[7]

At bottom, Plaintiff asks the Court to assume that false claims must have been submitted because HS Henderson was "an outlier in terms of per-patient reimbursement," and asks this Court to permit a discovery fishing expedition. Opp. at 12. But the data upon which Plaintiff relies ***post-dates*** the relevant time period, and Plaintiff offers nothing to support his assumption that the data is representative of a span of more than four years. Doc. 134 at 7–11, 18–21. In addition, according to the data, HS Henderson did not even have the highest per-patient reimbursement rate in the region. Am. Compl., Ex. D. More generally, courts in the Ninth Circuit have made clear that the use of comparative statistics do not provide "reliable indicia" of false claims. *See, e.g.*, *United States ex rel. Frazier v. Iasis Healthcare Corp.*, 812 F. Supp. 2d 1008, 1017 (D. Ariz. 2011) (comparison of the defendant hospital to other hospitals did not provide "reliable indicia" of false claims); *see also* Doc. 134 at 15–16. Plaintiff does not even attempt to distinguish these decisions in his Opposition.

### III. Plaintiff misunderstands the essential element of FCA materiality, which the Amended Complaint fails to adequately plead.

Plaintiff's Opposition misunderstands the essential element of FCA materiality. Plaintiff contends that he has sufficiently pleaded materiality because he has alleged that HS Henderson transmits FIM data to CMS, and FIM data affects the amount of Medicare reimbursement. Opp. at 14. But Plaintiff misses the point. Even if the Amended Complaint adequately alleged that the purported misconduct at HS Henderson affected a FIM score that was transmitted to CMS (and it does not), the Amended Complaint still does not allege that any supposedly affected FIM score would be "material to the Government's payment decision." *Universal Health Servs. v. United States ex rel.*

---

[7] For this reason, Plaintiff's reliance on *Welch* is again misplaced. There, unlike here, the insider plaintiff provided a detailed description of the claims process, and the court found that the false certification occurred when the defendant "submitted *claims* through the online submission system (HP Enterprise Services)." 2017 WL 1902159, at *6 (emphasis added). The *Welch* complaint also "identifie[d] if the patient is a recipient of Government benefits—e.g., [patient] H.W. received benefits under Tricare—and also identifie[d] what percentage of [the defendant's] patients and claims were reimbursed under the Medicaid and Tricare programs." *Id.* at *5 (citations omitted).

9

*Escobar*, 136 S. Ct. 1989 2002 (2016). Such an allegation is essential to the materiality analysis because even assuming that the alleged practices violate some unidentified regulatory requirement, the government nevertheless routinely may pay Medicare claims with complete awareness of such practices, which would be "very strong evidence" that any such requirement is not material. *Id*. at 2003; *United States v. Scan Health Plan*, No. CV 09-5013, 2017 WL 4564722, at *6 (C.D. Cal. Oct. 5, 2017) (dismissing FCA claims where complaint "fail[ed] to allege that CMS would have refused to make … payments … if it had known the facts about the [defendants'] alleged" fraudulent conduct).

### IV. The Court should exercise its discretion to dismiss the Amended Complaint with prejudice.

The Court should exercise its discretion to dismiss the Amended Complaint without leave to amend. Plaintiff appears to assume that there is an absolute right to amend the Amended Complaint. *Id.* Not so. A Plaintiff must "explain how [amendment] can cure" the "defects" identified in the defendant's motion to dismiss. *Indian Homes Programs, LLC Series III v. Green Tree Servicing, LLC*, No. 2:15-CV-00026-JAD, 2015 WL 5132456, at *4 (D. Nev. Sept. 1, 2015). Plaintiff has not done that here. Plaintiff has not identified a single allegation that he would change or add in a second amended complaint to cure the Amended Complaint's deficiencies.

For good reason. Plaintiff simply does not have anything else to allege. The Amended Complaint is Plaintiff's second attempt and, consequently, must be his "best shot." Yet, it is still not good enough. This should not be surprising, given that Plaintiff is an "outsider" to HS Henderson who has no actual information to support the purported fraud. Because amendment would be futile, this Court should dismiss the Complaint without leave to amend.

### V. In the alternative, and at a minimum, the Court should dismiss the Amended Complaint with respect to Defendants HealthSouth and Mr. Bowman.

#### A. The Amended Complaint fails to plead knowledge as to Mr. Bowman.

Although Rule 9(b) does not require that relators plead "knowledge" with particularity, Plaintiff cannot dispute that FCA's knowledge requirement is "rigorous." *Escobar*, 136 S. Ct. at 2002. The Amended Complaint's allegations of Mr. Bowman's knowledge do not withstand rigorous scrutiny.

Plaintiff is convinced that he has adequately alleged Mr. Bowman's knowledge because the Amended Complaint generally asserts that all Defendants acted "knowingly." Opp. at 12–13; Am. Compl. ¶ 116. Such a conclusory allegation is insufficient under Rule 8. Aside from that generalized allegation, the Amended Complaint alleges that Mr. Bowman told Plaintiff that the alleged FIM scoring practices were "permissible" to protect patient safety. *See* Am. Compl. ¶ 68. In other words, although Plaintiff believes that HS Henderson's alleged policies were unlawful, the Amended Complaint alleges that Mr. Bowman believed the policies were lawful.

Under *Hagood v. Sonoma County Water Agency*, 81 F.3d 1465, 1478 (9th Cir. 1996), FCA knowledge cannot be premised on a "disputed legal question," at least so long as the dispute is reasonable.[8] Plaintiff has failed to allege that Mr. Bowman's alleged belief that the purported FIM scoring practices were permissible was unreasonable, and Plaintiff's disagreement with Mr. Bowman about the legality of HS Henderson's alleged policies is insufficient to allege FCA knowledge.

### B. HealthSouth's alleged "inaction" is insufficient to state an FCA claim against it.

Finally, the Court should dismiss the Amended Complaint with respect to HealthSouth because the Amended Complaint does not allege that HealthSouth directly participated in the alleged fraud. It is axiomatic that an FCA plaintiff must allege that a defendant took some action in presenting, or causing to be presented, a purported false claim. Mere "inaction" is never sufficient. *United States ex rel. Grubbs v. Ravikumar Kanneganti*, 565 F.3d 180, 192 (5th Cir. 2009).

In his Opposition, Plaintiff first argues that HealthSouth violated its corporate integrity agreement ("CIA") when it failed to inform the government about the HS Henderson's alleged fraud. As Plaintiff tells it, this violation of the CIA was an independent violation of the FCA. But "[t]he [FCA] is not an all-purpose antifraud statute, or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Escobar*, 136 S. Ct. at 2002–03. Instead, the *sine qua non* of a claim under 31 U.S.C. §§ 3729(a)(1)(A) and (a)(1)(B) is the submission of *false claims*. The mere failure to notify the government, divorced from the submission of a false claim, cannot independently violate §§ 3729(a)(1)(A) and (a)(1)(B), even if that failure violates a CIA.

---

[8] Plaintiff tries to avoid *Hagood* because *Hagood* was a summary judgment decision. But Plaintiff does not dispute that "disputed questions of law" cannot be a basis for FCA knowledge.

11

1    Nor does the alleged violation of HealthSouth's CIA create any liability under § 3729(a)(1)(G), the so-called "reverse" false claims provision. To recover on a reverse false claims theory, a plaintiff must allege that the defendant concealed or avoided an "obligation" to pay money to the government. In turn, an obligation is defined as an "established duty." *Id*. § 3729(b)(3). Contingent, potential penalties that *possibly could be assessed*, but have not yet been, are not "established duties" for the purposes of a reverse false claim. *See United States ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*, 843 F.3d 1033, 1039–40 (5th Cir. 2016) ("[U]nassessed regulatory penalties are not obligations under the FCA."). Thus, a supposed failure to report an alleged FCA violation that could eventually lead to a government investigation, which could eventually lead to the imposition of a monetary penalty, does not violate the § 3729(a)(1)(G). *See id*. at 1039-42.

Alternatively, the Opposition suggests without factual basis that HealthSouth "did exercise control over [HS Henderson] and Bowman." But as HealthSouth made clear in its motion to dismiss, the Amended Complaint's control allegations have "described nothing more than a parent-subsidiary relationship." Doc. 133 at 18. Nowhere does the Amended Complaint allege that HealthSouth controls the "day-to-day activities of its wholly owned subsidiaries," or that "HealthSouth acts as more than a typical parent company with respect to [HS] Henderson, or with respect to the claims process or the alleged fraudulent scheme." Doc. 127 at 11–12. More importantly, there is certainly nothing in the Amended Complaint that alleges "that *the scheme itself* was controlled or directed by" HealthSouth, which is essential to holding a parent liable for the alleged fraud of its subsidiary. *United States ex rel. Lisitza v. Par Pharm. Cos.*, No. 06 C 06131, 2013 WL 870623, at *5 (N.D. Ill. Mar. 7, 2013). To the contrary, the Amended Complaint is premised on the fact that HS Henderson's "unlawful fimming" was different than the practices at other HealthSouth facilities. And Plaintiff repeatedly contends that HealthSouth told HS Henderson "*to cease*" its "fimming" practices (Opp. at 9 (emphasis added))—but that HS Henderson refused. That allegation shows the opposite of control and negates any inference that HealthSouth directly participated in the alleged fraud.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Amended Complaint with prejudice.

DATED this 14th day of May, 2018.

SEMENZA KIRCHER RICKARD

*/s/ Christopher D. Kircher*
Lawrence J. Semenza, III, Esq., Bar No. 7174
Christopher D. Kircher, Esq., Bar No. 11176
Jarrod L. Rickard, Esq., Bar No. 10203
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145

BRADLEY ARANT BOULT CUMMINGS LLP

*/s/ Jack W. Selden*
Jack W. Selden, Esq. (admitted *pro hac vice*)
1819 Fifth Avenue North
Birmingham, Alabama 35203

*/s/ Kimberly Bessiere Martin*
Kimberly Bessiere Martin, Esq. (admitted *pro hac vice*)
200 Clinton Avenue West, Suite 900
Huntsville, Alabama 35801

*Attorneys for Defendant Kenneth Bowman*

PISANELLI BICE PLLC

*/s/ James Pisanelli*
James J. Pisanelli, Esq., Bar No. 4027
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101

NORTON ROSE FULBRIGHT US LLP

*/s/ R. Jeffrey Layne*
R. Jeffrey Lane, Esq. (admitted *pro hac vice*)
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701

*Attorneys for Defendants HealthSouth Corp. and HealthSouth of Henderson, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Semenza Kircher Rickard, and that on the 14th day of May, 2018, I served a true copy of the foregoing **DEFENDANTS' CONSOLIDATED REPLY IN SUPPORT OF THEIR MOTIONS TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM** via the Court's electronic filing system and served on all counsel of record. Copies of this document have been served by electronic means on all registered users of the Court's CM/ECF system who have appeared in this case.

*/s/ Olivia A. Kelly*
An Employee of Semenza Kircher Rickard