**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

UNITED STATES OF AMERICA
*ex. rel.*, JOSHUA LUKE,

        Plaintiffs,

vs.

HEALTHSOUTH CORPORATION, *et al.*,

        Defendant.

2:13-cv-01319-APG-VCF

**ORDER**

Before the Court are relator Joshua Luke, for the law firms Morgan Verkamp LLC and Law Office of Merril Hirsh PLLC, and Troutman Sanders LLP's motions for attorneys' fees. (ECF Nos. 242, 243, and 244). The motions are fully briefed (ECF Nos. 248, 249, 250, 251, and 252) and are both granted in part.

**I.**     **Background**

Relator filed this action under seal on July 24, 2013, alleging in part that defendants ("HealthSouth") submitted false claims for payments in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq. (ECF No. 1). The Washington, D.C. and Orange County, California offices of Troutman Sanders, LLP ("Troutman") represented Dr. Luke from 2013 until the Court disqualified Troutman Sanders in 2017 due to a conflict-of-interest. (ECF No. 103). Relator continued to be represented by Merril Hirsh ("Hirsh') and retained Morgan Verkamp, LLC ("Morgan"), an Ohio law firm whose practice focuses on False Claims Act cases. (ECF No. 244 at 5). The United States of America initially declined to intervene in this case, so the relator maintained the action. (ECF No. 34). On November 5, 2019, this Court dismissed all claims (except the claims for attorneys' fees and costs

1

under 31 U.S.C. § 3730(d)) pursuant to the terms of the settlement agreement entered into between the relator, the United States of America, and the defendants. (ECF No. 235).

The relator argues that the Morgan and Hirsh law firms are entitled to reasonable fees and costs for work by five attorneys, two paralegals, and one investigator. (ECF No. 244-1 at 10). Defendants argue that Morgan and Hirsh's fees are unreasonable because (1) the hourly rates are above Nevada market rates, (2) that the firms' billing is "partner heavy"; (3) that Morgan's paralegal and investigator rates are unsupported; (4) that the number of hours the firms request are unreasonable; and (5) that the firms are not entitled to the requested fees and costs. (ECF No. 249). The relator disputes all defendants' assertions but voluntarily offers an across-the-board seven and a half percent lodestar reduction to account for any concerns regarding the firms' billing practices. (ECF No. 25 at 6). The relator argues in support of the motion for fees and costs that: (1) there appear to be no attorneys practicing in Nevada who focus their practice on *qui tam* litigation on behalf of whistleblowers like the Morgan and Hirsh firms; and (2) that the defendants have offered no evidence to the contrary (defendants themselves are represented by two large national firms and have not disclosed their rates). (*Id.* at 3).

Troutman argues it is entitled to all its fees and costs for the time period that it represented the relator, from March 13, 2013 through November 10, 2017. (ECF No. 242 at 1). The defendants argue that none of Troutman's fees should be recoverable because the Court disqualified him due to a conflict of interest. (ECF No. 249 at 4). Troutman argues in its reply that dual representation does not automatically result in a conflict that bars attorneys' fees. (ECF No. 252 at 2). Both the defendants and Troutman argue in the alternative that the Court could limit Troutman's fees to those incurred before the conflict of interest arose. (ECF Nos. 249 at 4 and 252 at 5). Defendants argue in the alternative that Troutman's hours must be reduced to account for the conflict of interest from 761.8 hours to 500.27, subtracting the hours Troutman worked after the conflict arose. (ECF No. 249 at 17).

2

Troutman does not dispute the defendants' reduced hours in his argument in the alternative for fees prior to the conflict, but Troutman states that Troutman incurred fees of $199,647.50 prior to February 22, 2017. (ECF No. 252 at 5). Troutman also voluntarily reduces its fee request by an additional ten percent to account for any concerns about billing, duplication, specificity, or any other objections. (ECF No. 252-1 at 5). Troutman states that with his 10% voluntary deduction, his fees would be $179,682.75 prior to February 22, 2017. (ECF No. 252 at 5). Troutman, however, does not provide the Court with an updated lodestar calculation to show how many hours he calculated to obtain his figures.

**II.   Analysis**

The FCA includes a fee-shifting provision that requires defendants to reimburse successful relators for expenses, fees and costs. 31 U.S.C. §3730(d)(2). The FCA entitles successful relators to an award of "reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." *Id.* "[T]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate" *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); see also *Carter v. Caleb Brett LLC*, 757 F.3d 866, 868 (9th Cir. 2014)("[A] reasonable fee award under a federal fee-shifting statute…a district court must first calculate the lodestar by multiplying the number of hours expended by the reasonable hourly rate."). The district court may then adjust upward or downward based on a variety of factors. *Hensley*, 461 U.S. at 434.

"[T]he fee applicant bears the burden of documenting the appropriate hours expended and hourly rates" and submitting "evidence supporting the hours worked and rates claimed." *Id.* at 433, 437. The Court must also decide whether to increase or reduce the lodestar amount based upon factors

enumerated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), [1] which is consistent with Local Rule 54-14; see also *Blum v. Stenson*, 465 U.S. 886, 896 n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)) (emphasizing the importance of using the "market rate" in calculating attorneys' fees). Out-of-market rates may be available, "if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

A district court has discretion in determining what fees are reasonable." *United States ex rel. Cretney-Tsosie v. Creekside Hospice II, LLC*, No. 2:13-cv-00167-APG-PAL, 2018 U.S. Dist. LEXIS 157961, at 6 (D. Nev. Sep. 17, 2018); citing to *Chaudhry v. City of L.A.*, 751 F.3d 1096, 1100 (9th Cir. 2014). In exercising its discretion, "the court must provide a concise but clear explanation of its reasons for the fee award." *Chaudhry,* 751 F.3d at 1100.

Attorneys' fees awards may include paralegal fees. See *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 284, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989); see also *Agarwal v. Oregon Mut. Ins. Co*., 2013 U.S. Dist. LEXIS 155647, 2013 WL 5882710, at 3 (D. Nev. Oct. 30, 2013) (awarding fees for paralegal work). In 2018 this Court found that reasonable Nevada market rates for paralegals in an FCA case to be $150 per hour and that reasonable Nevada market rates for attorneys in an FCA case to range from $300 to $600 per hour. *Cretney-Tsosie*, No. 2:13-cv-00167-APG-PAL, 2018 U.S. Dist. LEXIS 157961, at 7. This Court has also awarded $750 per hour as "reasonable and consistent" with Nevada market rates for

---

[1] The *Kerr* factors are: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases."

4

an experienced partner at a civil litigation firm. *Crew-Jones v. State Farm Mut. Auto. Ins. Co.*, 2012 U.S. Dist. LEXIS 74360, at 3-4 (D. Nev. May 30, 2012). The Court has considered past holdings along with the affidavits the parties submitted with their briefing.

### a. Troutman's Petition for Fees and Costs

"In determining what fees are reasonable, a district court may consider a lawyer's misconduct, which affects the value of the lawyer's services. A court has broad equitable power to deny attorneys' fees (or to require an attorney to disgorge fees already received) when an attorney represents clients with conflicting interests." *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012). "[W]hen the ethical violation in question is a conflict of interest between the attorney and the client (or between the attorney and a former client), the appropriate fee for the attorney is zero," if "the violation is one that pervades the whole relationship." *U.S. ex rel. Virani v. Jerry M. Lewis Truck Parts & Equip., Inc.*, 89 F.3d 574, 579 (9th Cir. 1996). A law firm may be, "entitled to compensation only for services it rendered prior to its breach of professional conduct [ ]." *Id.*, citing to *Jeffry v. Pounds*, 67 Cal. App. 3d 6, 12, 136 Cal. Rptr. 373, 377 (1977).

"An attorney may not recover fees when services were rendered in violation of the rules of professional conduct." *Cohen v. Gold*, No. 2:17-cv-00804-JAD-NJK, 2018 U.S. Dist. LEXIS 40661, at 11 (D. Nev. Mar. 12, 2018); citing to *Frank Settelmeyer & Sons, Inc. v. Smith & Harmer, Ltd.*, 124 Nev. 1206, 197 P.3d 1051, 1059 (Nev. 2008). Mere dual representation does not automatically result in a conflict of interest that bars attorneys' fees. See *Frank Settelmeyer & Sons, Inc.*, 197 P.3d at 1059 (finding "no conflict of interest necessitating consent or barring [the attorney's] recovery of attorney fees" despite dual representation). See also *In re E. Sugar Antitrust Litig.*, 697 F.2d 524, 533 (3d Cir.1982) (disgorgement of attorneys' fees before ethical violation occurred is appropriate only where the "breach of professional ethics is so egregious that the need for attorney discipline and deterrence of

5

future improprieties of that type outweighs" the concerns of providing "the client with a windfall" and depriving the "attorney of fees earned while acting ethically").

The Court considered the declaration of attorney Kevin Kieffer, which demonstrates that the firm's attorneys' hourly rates ranged from $175 per hour for an associate attorney to $810 per hour for a partner level attorney. (ECF No. 242-1 at 5). In 2017, the Court disqualified Troutman due to a conflict of interest. (ECF No. 86). On February 22, 2017, Troutman attorneys agreed to represent HealthSouth for lobbying services without obtaining its informed consent. (ECF No. 86). Black's Law Dictionary defines lobbying as an act of advocacy, "to try to influence (a decision-maker)." See Black's Law Dictionary (8th ed. 2004). The conflict is egregious here given that Troutman represented a client who alleged that HealthSouth submitted fraudulent claims to the government for payments, and then Troutman agreed to simultaneously advocate for HealthSouth to government officials to influence their decision making. The Court finds that Troutman's representation of both the relator and HealthSouth on and after February 22, 2017 is a conflict that requires disgorgement of fees once conflict arose, and Troutman is not entitled to any fees or costs for work on or after February 22, 2017. Troutman earned fees while acting ethically from 2013 to 2017 prior to the conflict, and the Court finds that Troutman is entitled to reasonable fees for that time period. The Court exercises its discretion and reduces the total lodestar an additional eight percent, on top of Troutman's voluntary ten percent, to deter future improprieties.

**b. Relator's Motion for Fees and Costs**

The Court considered the attorneys' affidavits for the Morgan and Hirsh firms demonstrate a range from $275 per hour for junior associates to $810 per hour for more experienced partners. Mr. Morgan's affidavit states that he has practiced law for nearly 40 years; he has focused his law practice on whistleblower cases for the past 25 years. (ECF No. 244-1 at 2). Mr. Hirsh's affidavit also states that

he has practiced law for nearly 40 years and he also focus his practice on FCA cases. (ECF No. 244-2 at 7). The defendants concede that the rates for the partner Rao and the associates' rates are congruent with Nevada market rates for FCA pursuant to *Cretney-Tsosie*, No. 2:13-cv-00167-APG-PAL, 2018 U.S. Dist. LEXIS 157961 at 7, but argue that all attorneys' rates should be reduced by $50 for "partner heavy" billing. (ECF No. 249 at 10). Defendants specifically dispute Mr. Morgan's $700 per hour rate and Mr. Hirsh's $810 rate as being unreasonable market rates. The relator submitted evidence that Investigator Strauch has 30 years investigating fraud against taxpayers in law enforcement. (ECF No. 250 at 4).

The Court reduced Mr. Morgan and Mr. Hirsh's rate considering Nevada market rates given that the relator litigated this case in this forum. The Court finds that the Nevada market rates are adequate compensation to attract competent counsel yet avoid producing a windfall for lawyers. The Court also considered the fact that there appear to be few if any lawyers in the community who are willing to take high-risk whistleblower cases on a contingency, and that the Morgan firm is well informed on FCA cases and had to enter this ongoing litigation after the Court disqualified Troutman. The Court also considered the fact that rates have slightly increased over the last couple of years, and that the Morgan and Hirsh firms are small with two assigned associates regarding whether the rates should be reduced for partner heavy billing. The Court finds that no further reduction for alleged partner heavy billing is warranted. The Court similarly reduced Troutman's rates considering Nevada market rates.

//

### c. Reasonable Rates

The Court determines that the reasonable Nevada market hourly rates for the Morgan and Hirsh firm attorneys, investigator, and paralegals are as follows:

| Paralegals | $150 |
| --- | --- |
| Jonathan Lischak | $275 |
| Ian Doig | $325 |
| Jay Strauch (investigator) | $250 |
| Sonya Rao | $600 |
| Rick Morgan | $650 |
| Merril Hirsh | $710 |

The Court determines that the reasonable Nevada market hourly rates for Troutman for the period prior to February 22, 2017 are as follows:

| Paralegals and Librarians | $150 |
| --- | --- |
| Nick Harper | $175 |
| Paddy Browne | $285 |
| Candice Shang | $365 |
| Natalie Sacha | $350 |
| Thomas Prouty | $425 |
| Jeremy Burnette | $375 |
| Lauren Grochow | $365 |
| Daniel Streeter | $520 |

| Kevin Kieffer | $595 |
| Bryan Lavine | $600 |
| Merril Hirsh | $710 |

### d. Reasonable Hours

The defendants raise several objections to the number of hours for the Morgan and Hirsh firms and it proposes significant cuts. The defendants also argue generally that Troutman's hours should be cut significantly due to its unethical behavior.

#### i. Block Billing, Duplicative, Excessive Travel Time, and Clerical Tasks

Block billing is "legitimate grounds for reducing or eliminating certain claimed hours, but not for denying all fees." *Mendez v. Cty. of San Bernardino*, 540 F.3d 1109, 1129 (9th Cir. 2008), overruled on other grounds by *Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014). A fee applicant bears the burden of submitting "evidence supporting the hours worked and rates claims," but is "not required to record in great detail how each minute of his time was expended." *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). "[P]laintiff's counsel can meet its burden" regarding documented hours, "by simply listing his hours and 'identifying the general subject matter of his time expenditures.'" *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000), citing to *Davis v. City & Cty. of San Francisco*, 976 F.2d 1536, 1542 (9th Cir. 1992) vacated in part on other grounds, 984 F.2d 345 (9th Cir. 1993)) (quoting *Hensley,* 461 U.S. at 437 n. 12).

Courts may reduce, "lodestar hours for a variety of reasons, including duplicative work and vague time sheet entries," and "excessive time [ ]" *In re : Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1298 (9th Cir. 1994). "Findings of duplicative work should not become a shortcut for reducing an award without identifying why the requested fee was excessive and by how much." *Moreno*

9

*v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). "The Ninth Circuit has established that travel time and clerical tasks are reasonably compensated at normal hourly rates if such is the custom in the relevant legal market." *Comcast of Ill. X, LLC v. Jung Kwak*, 2010 U.S. Dist. LEXIS 105809, 2010 WL 3781768 at 6 (D. Nev. Sept. 17, 2010) (citing *Davis* 976 F.2d at 1543).

The defendants identify nearly 900 entries as vague or block-billed and proposes an additional twenty five percent reduction to all hours in this category. Courts (and clients) disfavor block billing because it makes it difficult to discern how much time the attorneys spent on each activity. The Court has reviewed the challenged entries, and each entry details the character of the work the attorney performed. For example, defendants challenge Mr. Hirsh's December 9, 2017 billing entry for 1.80 hours that states, "[b]egin to analyze Defendants' Motion for a Protective Order and continue to draft points for opposition[.]" Drafting points in opposition while reviewing a motion is often a simultaneous part of an attorney's analytical process and breaking this into multiple entries would be impractical. Other challenged entries, such as Mr. Doig and Ms. Rao's July 2, 2018 "doc review" and "review docs" entries are concise; but conciseness is not synonymous with vague because the Ninth Circuit has found that attorneys may bill entries in general categories. See e.g. *Fischer* 214 F.3d 1115 at 1121 (approving an application that, "provided a summary of the time spent on a broad category of tasks such as pleadings and pretrial motions (16.5 hours), settlement (4.2 hours), and court appearances (1.5 hours)). The Court has reviewed the challenged entries in the vague category and finds that the descriptions provide enough information to show that the time entries are reasonable and recoverable.

This Court agrees with defendants' argument that plaintiffs should be paid Nevada rates because they litigated in this forum, thus the Court must also consider the customs of the Nevada legal market in considering billed travel time and clerical tasks. In *Cretney-Tsosie v. Creekside Hospice II, LLC*, No. 2:13-cv-00167-APG-PAL, this Court found that attorneys in Nevada usually bill travel time and clerical

tasks at normal rates. *Id.* at 10. Defendants also argue that the hours the Morgan and Hirsh firms spent traveling were excessive. (ECF No. 249 at 13). Defendants have not presented any evidence that the custom to bill travel and clerical time at normal rates has changed since 2018, and based on the Courts experience and knowledge of the Nevada legal market, the Court finds that the challenged billing entries in the categories of travel time and clerical tasks are reasonable based on the customs of the Nevada legal market. The Court also finds that the billed entries for travel time associated with litigating this case are not excessive.

The defendants' arguments that the Morgan firm's time entries are duplicative are unavailing. The Court has reviewed the objected to entries and finds that the entries are not duplicative because the Morgan firm has met its burden to show that it entered its billing at different times for similar, but different, tasks. For example, defendants object to Mr. Doig's two-time entries for "review d's production" on July 9 and July 10, 2018, but the relator explains that Mr. Doig reviewed their production both days and entered two-time entries each day because he took a break for lunch. (ECF No. 250 at 8). The Court finds that the Morgan and Hirsh have substantiated their time entries, and the Court will not reduce the lodestar amount beyond what the relator has already self-imposed. The Court reduces Troutman's hours from 761.8 hours to 500.27 hours in accordance with the defendants' request (ECF No. 249 at 17) due to Troutman's unethical behavior leading to the Court's disqualification.

### ii. Limited Success

Defendants argue that because relator settled this case for only $4,000,000, the Court should reduce the relator's post-settlement fee award. The defendants cite to a Ninth Circuit FCA case where the Ninth Circuit found that a district court may exercise its discretion and, "may reduce a request for attorneys' fees when the applicant achieved only limited success in the underlying litigation. *United States v. Biotronik, Inc.*, 716 F. App'x 590, 593 (9th Cir. 2017), citing to *Hensley v. Eckerhart*, 461 U.S.

11

424, 440, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) ("A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole.").

Relator counters that fee awards are mandatory under the FCA, a point recognized by this Court in *Cretney-Tsosie v. Creekside Hospice II, LLC*, No. 2:13-cv-00167-APG-PAL at 3 ([t]he FCA includes a mandatory fee-shifting provision), and points to a decision by a sister district court holding, "[u]nlike the discretion afforded district courts in reviewing an award of fees to prevailing parties in civil rights cases, Congress requires we award reasonable attorney's fees and expenses to parties who recover money for the United States under the False Claims Act." *CFI, LLC v. Victaulic Co.*, 2019 U.S. Dist. LEXIS 153536, 1-2 (E.D. Pa., September 9, 2019) (awarding $1.2 million in fees following a recovery of $600,000, *id.* at 32).

The facts show that the United States paid the relator the maximum thirty percent relator's share, which counters defendants' limited success argument. Pursuant to 31 U.S.C.S. § 3730(d)(2), "the person bringing the action or settling the claim shall receive an amount which the court decides is reasonable for collecting the civil penalty and damages. The amount shall be not less than 25 percent and not more than 30 percent of the proceeds of the action or settlement and shall be paid out of such proceeds." The Court finds there is no reason to reduce the lodestar amount beyond what counsel has already self-imposed.

//

12

### e. Lodestar Calculation

The Court calculates the lodestar figure and subtracts relator's voluntary seven and a half percent.[2]

| Attorney | Rate | Hours | Total |
|---|---|---|---|
| Paralegals | $150 | 140.7 | $21,105 |
| Jonathan Lischak | $275 | 49.5 | $13,613 |
| Ian Doig | $325 | 759 | $246,675 |
| Jay Strauch (investigator) | $250 | 15.5 | $3,875 |
| Sonya Rao | $600 | 767.7 | $460,620 |
| Rick Morgan | $650 | 420.2 | $273,130 |
| Merril Hirsh | $710 | 485.7 | $344,847 |

Based on that calculation, the total before the voluntary reduction is $1,019,018 for the Morgan firm and $344,847 for Hirsh. The voluntary seven and a half reduction brings the total fees to $942,591.19 for the Morgan firm and $318,983.48 for Hirsh.

The Court next calculates the lodestar figure and subtracts Troutman's voluntary ten percent and the Court's imposed eight percent reduction.

| Attorney | Rate | Hours | Total |
|---|---|---|---|
| Paralegals and Librarians | $150 | 47.68 | $7,152 |
| Nick Harper | $175 | 4.5 | $788 |

---

[2] See *Cretney-Tsosie* No. 2:13-cv-00167-APG-PAL at 6 (applying relator's voluntary fifteen-percent reduction after reducing lodestar).

13

| Paddy Browne | $285 | 20.74 | $5,911 |
| Candice Shang | $365 | 76.26 | $23,502 |
| Natalie Sacha | $350 | 64.39 | $22,537 |
| Thomas Prouty | $425 | 24.36 | $10,353 |
| Jeremy Burnette | $375 | 11.93 | $4,474 |
| Lauren Grochow | $365 | 13.84 | $5,052 |
| Daniel Streeter | $520 | 1.05 | $546 |
| Kevin Kieffer | $595 | 111.98 | $66,628 |
| Bryan Lavine | $600 | 24.3 | $14,580 |
| Merril Hirsh (partner) | $710 | 111.11 | $78,888 |

Based on that calculation, the total before the eighteen percent reduction for Troutman is $244,742. The voluntary ten percent reduction brings the total fees to $220,268.12. The Court's imposed eight percent reduction brings the fee award to $200,688.73.[3]

//

---

[3] The Court notes that Troutman's requested fee award of $179,682.75 for fees prior February 22, 2017 (ECF No. 252 at 5) is lower than the Court's calculation, even though the Court adopted the defendants' reduced hours (ECF No. 249 at 17) and reduced Troutman's rates using the Nevada rates. Troutman's reported fees prior to the conflict are even lower than the defendants' suggested reduced fee of $184,771.63. (ECF No. 249). Troutman does not provide an updated lodestar calculation in the alternative in his reply or show how he calculated this figure. The Court finds that the additional eight percent decrease, on top of the voluntary ten percent, is a fair reduction overall, considering that Troutman originally asked for $397,974.50 in fees in his petition. (ECF No. 242-1 at 5).

### f. Costs and Expenses

Title 31 U.S.C. § 3730 also provides that the Court award reasonable costs and expenses to successful *qui tam* relators who brought or settled the claim. The relator requests costs and expenses in the amount of $95,111.87 incurred by the Morgan firm (ECF No. 244-1 at 13) and $4,599.67 incurred by the Hirsh firm (ECF No.244-2). The defendants' objections, including that the attorneys at the Morgan firm should not have traveled for hearings and that their expert witnesses' time entries were vague, are unavailing. The relator's attorneys, as *pro hac vice* counsel, had the right to appear in this Court at hearings. The expert witnesses' invoices are detailed and not vague. The Court finds that the costs and expenses the Morgan and Hirsh firms incurred were reasonable and necessary expenditures. Adding the costs to the lodestar calculated above, the total award of attorneys' fees, costs, and expenses is $1,037,703.06 for the Morgan firm and $323,583.15 for the Hirsh firm.

The Troutman firm states that it is entitled to costs (ECF No. 242 at 3) but failed to request costs or include an itemization in its supporting declaration so that the Court could review whether the costs or expenses were necessary or reasonable. Given (1) that the Court calculates a fee award using the Nevada market rate (based on defendants' hour-count calculation) that is higher than what the Troutman firm self-calculated without explanation in its reply; and (2) that Troutman failed to calculate costs or expenses: the Court finds that it is reasonable to award Troutman $0 in costs and expenses.

### III. Conclusion

IT IS ORDERED that both the relator Joshua Luke and Troutman Sanders LLP's motions for attorneys' fees and expenses (ECF Nos. 242 and 243) and are both GRANTED IN PART.

IT IS FURTHER ORDERED that relator Joshua Luke is entitled to $1,037,703.06 in attorneys' fees, costs, and expenses for the Morgan firm and $323,583.15 in attorneys' fees, costs, and expenses for the Hirsh firm.

IT IS FURTHER ORDERED that Troutman Sanders LLP is entitled to $200,688.73 in attorneys' fees.

IT IS SO ORDERED.

DATED this 11th day of March 2020.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE